# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SHANNON VOLLING and ALLEN SPRINGER | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 14-cv-4423 |
| ANTIOCH RESCUE SQUAD and KURTZ | ) | |
| PARAMEDIC SERVICE, INC. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Shannon Volling and Allen Springer filed a seven-count complaint against corporate defendants Antioch Rescue Squad ("ARS") and Kurtz Paramedic Service, Inc. ("Kurtz"), alleging claims of retaliation in violation of Title VII of the Civil Rights Act of 1991 (Counts I and II), the Illinois Human Rights Act (Counts III and IV) and the Illinois Whistleblower Act (Counts V and VI) against both defendants, and tortious interference with prospective economic advantage (Count VII) against ARS. Ms. Volling and Mr. Springer claim that ARS and Kurtz retaliated against them in various ways after they engaged in protected activity. ARS and Kurtz moved to dismiss all counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Before briefing was complete, however, Plaintiffs settled their claims with ARS and stipulated to ARS' dismissal from the case. ARS' motion to dismiss has been stricken as moot and Kurtz's motion to dismiss is now fully briefed. For the reasons set forth herein, Kurtz's motion to dismiss [18] is granted.

**Background**

The following facts are taken from the complaint and accepted as true for the purposes of

ruling on the instant motion. ARS is a rescue squad operator offering ambulance and paramedic services in Antioch, Illinois. (Compl. ¶¶ 6, 10.) It employs emergency medical technicians ("EMTs") on a paid basis for weekday, daytime shifts, and coordinates volunteers for its evening and weekend shifts. (*Id.*) ARS contracts with paramedic service providers, such as Metro Paramedic Services, Inc. ("Metro") and defendant Kurtz to staff its paid EMTs. (*Id.* ¶¶ 8, 11, 12.) At times relevant to this case, ARS maintained contracts with Metro and ARS. (*Id.*) Ms. Volling was employed by ARS and Metro as of March 2010, and Mr. Springer began his employment with ARS and Metro in or about 2009. (*Id.* ¶¶ 17-19.)

On April 5, 2011, Ms. Volling filed an EEOC charge against ARS and Metro, alleging sexual harassment, discrimination, and retaliation. (*Id.* ¶ 21.) Ms. Volling then filed a complaint in this district on July 21, 2011 against ARS and Metro claiming civil rights violations and state common law claims based on allegations of sexual harassment and other misconduct within ARS and Metro's workplace (the "Volling Lawsuit"). (*Id.* ¶ 23.) On October 3, 2011, Mr. Springer signed a declaration in support of the Volling Lawsuit, affirming allegations of sexual harassment and other misconduct at ARS/Metro. (*Id.* ¶ 26.) Plaintiffs allege that ARS and Metro were provided with Mr. Springer's declaration. (*Id.* ¶ 27.) There is no allegation that Kurtz received the declaration or the Volling Lawsuit complaint.

On October 26, 2011, Ms. Volling reported patient mistreatment and public safety issues to the Illinois Department of Public Health ("IDPH"). (*Id.* ¶ 31.) Plaintiffs cooperated with the ensuing IDPH investigation. (*Id.* ¶ 33.) Mr. Springer also reported misconduct by ARS and Metro squad members that would violate the EMS Act to the North Lake County EMS System. (*Id.* ¶ 30.) Plaintiffs raised their concerns regarding the misconduct and public safety issues at Village of Antioch meetings, including a May 2012 session where ARS' leadership was present.

(*Id.* ¶¶ 44, 45.)

Plaintiffs allege that they were retaliated against for reporting their concerns. They allege that ARS reduced work hours, issued discipline, made accusations of misconduct which resulted in forced drug tests, and threatened termination (*Id.* ¶¶ 38-42.) All of this alleged activity occurred prior to June 15, 2012, and is attributed to ARS. On June 15, 2012, ARS terminated its contract with Metro and entered into a contract with Kurtz whereby ARS paid a monthly fee to Kurtz to staff its weekday, daytime personnel. (*Id.* ¶ 12.) Each of the daytime employees thus lost their employment through Metro, including Plaintiffs. (*Id.* ¶ 47.) On June 16, 2012, Kurtz, made offers of employment to each of Metro's former employees except for Plaintiffs. (*Id.* ¶¶ 48-51.) Plaintiffs claim that in retaliation for their complaints to government entities about the above misconduct, ARS and Kurtz acted together and "refused to hire" them. (*Id.* ¶ 52.) In support, Plaintiffs allege that ARS provided all former Metro employees, except Plaintiffs, the name of Kurtz's hiring manager and instructed them to call her; that ARS never informed Plaintiffs that Kurtz was the new service provider or that they should contact Kurtz's hiring manager; that ARS recommended hiring all former Metro employees except Plaintiffs; and that ARS instructed Kurtz to offer paid employment to each of Metro's former employees except Plaintiffs. (*Id.* ¶¶ 48-51.)

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must allege factual "allegations that raise a right to relief above the

speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). Put another way,

Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.

Ct. 1937, 173 L.Ed.2d 868 (2009); *see also* Fed.R.Civ.P. 8(a). When ruling on a motion to

dismiss, the Court must accept all well-plead factual allegations in the complaint as true and

draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692

F.3d 828, 830 (7th Cir. 2012).

**Discussion**

**a. Failure to Exhaust Administrative Remedies**

Before bringing a Title VII claim in court, a plaintiff must file a charge with the EEOC

detailing the alleged discriminatory conduct within the time allowed by statute, and the EEOC

must issue a right-to-sue letter. 42 U.S.C. § 2000e–5; *Conner v. Ill. Dep't of Natural Res.*, 413

F.3d 675, 680 (7th Cir. 2005). Similarly, in order to bring an Illinois Human Rights Act

("IHRA") claim, a plaintiff must first raise her claim through the administrative procedures set

forth in the Act. *See* 775 ILCS 5/8–111(D) ("[e]xcept as otherwise provided by law, no court of

this state shall have jurisdiction over the subject of an alleged civil rights violation other than as

set forth in this Act"); *Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 640 (7th Cir. 2004)

("[T]he Act also limits the jurisdiction of Illinois courts, mandating that any party seeking to

pursue a civil-rights claim in Illinois must first exhaust administrative remedies under the Act

....").

Thus, before plaintiffs can bring their Title VII or IHRA claims before this court, they

need to satisfy the administrative procedures set forth in 42 U.S.C. § 2000e and the IHRA. Here,

Plaintiffs allege only that they "will exhaust their administrative remedies … upon receipt of

their Notices of Rights to Sue." (Compl., ¶ 2.)  According to the docket, Plaintiffs have not filed

any supplemental information regarding their obligations to exhaust their administrative

remedies.  Because Plaintiffs have failed to allege any facts from which the Court could conclude

that they satisfied the requisite administrative procedures, Counts II and IV must be dismissed.

**b. Title VII Claim**

Even if Plaintiffs satisfied the appropriate administrative procedures, Plaintiffs fail to

state a claim for retaliation under Title VII.

To state a claim for retaliation under Title VII, a plaintiff must allege (1) that she engaged

in a legally protected activity, (2) she suffered an adverse employment action, and (3) a causal

connection between the protected activity and the adverse action.  *Stephens v. Erickson*, 569 F.3d

779, 786 (7th Cir.2009); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 664 (7th Cir. 2006);

*Alexander v. Gerhardt Enters., Inc.,* 40 F.3d 187, 195 (7th Cir. 1994).  While Plaintiffs are not

required to plead a prima facie case at this stage, they nonetheless retain the burden of alleging

facts sufficient to state all the elements of their claim.  *Twombly*, 550 U.S. at 569-70.  Kurtz does

not contest the sufficiency of Plaintiffs' allegations regarding their engagement in legally

protected activity.  Rather, Kurtz moves to dismiss Plaintiffs' claims for failure to satisfy the

second and third elements.

In the retaliatory failure-to-hire context, to establish an adverse employment action a

plaintiff must also allege, *inter alia*, that she applied for and had the technical qualifications for

the position sought.  *Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 812 (7th Cir. 2005);

*Morgan v. Federal Home Loan Mortg. Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003); *see also Velez*

*v. Janssen Ortho, LLC*, 467 F.3d 802, 806 (1st Cir. 2006) ("Put simply, in the absence of a job

application, there cannot be a failure-to-hire") (collecting retaliatory failure-to-hire cases).  Here,

Plaintiffs fail to allege anything about the position requirements or their qualifications beyond their own subjective opinion that "Plaintiffs performed their work responsibilities at or above [ARS and Metro's] legitimate expectations." (Compl. ¶ 20.)

Instead, Plaintiffs argue that they fall within an exception to this general rule that "waives" the application requirement. But, even according to Plaintiffs authorities, the exception applies where "the facts of a particular case make an allegation of a specific application a quixotic requirement," *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998), or where an employer "does not solicit and await applications" *Loyd v. Phillips Bros.*, 25 F. 3d 518, 523 (7th Cir. 1994). However, Plaintiffs fail to allege facts to demonstrate that this case is exceptional, and none of the cases they cite support their argument.

Contrary to their argument that the process was closed, Plaintiffs allege an open process where Kurtz solicited applications. They allege that Kurtz had a hiring manager; that former Metro employees were instructed to call her because Kurtz was the new service provider; and that they were subsequently hired as a result of their calls. Plaintiffs argue that the process was not open, but fail to allege that the former Metro employee offers were the only ones made or that no one else applied for or was considered for the position. For all these reasons, Plaintiffs fail to allege that they applied for and were qualified for the position and thus fail to allege an adverse employment action sufficient to support their claim.

Even if Plaintiffs had sufficiently pled an adverse employment action, they fail to allege that a causal connection exists between the adverse action and their protected activity. *Stephens*, 569 F.3d at 786. To meet this requirement, the plaintiff must allege her complaint led to or was a major factor in the adverse employment action – "speculation" will not suffice. *See Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). Although temporal proximity is not

strictly determinative, "the employer's adverse employment action should follow fairly soon after the employee's protected expression." *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 773 (7th Cir. 2002) (finding that without more, six months is too long to establish a causal link).

Here, Plaintiffs allege that in June 2012 Kurtz "had been made aware of the Volling Lawsuit" and "upon information and belief was otherwise aware of their reporting violations of the EMS Act," and failed to hire Plaintiffs in retaliation for this protected activity. (Compl. ¶ 53.) These events occurred nearly seven months prior to Kurtz's hiring decisions while Plaintiffs were employed by ARS and Metro, and in response to their alleged misconduct. Accordingly, Plaintiffs' allegations of a causal connection are purely speculative. Plaintiffs fail to allege when or how Kurtz was "made aware," or that ARS – or anyone – provided Kurtz with the Volling Lawsuit complaint or Mr. Springer's declaration. Nothing alleged in the complaint suggests Kurtz's knowledge of Plaintiffs' protected activity or any retaliatory motive. If anything, the facts alleged would tend to state a claim against ARS, the former defendant in this case with whom Plaintiffs settled: Plaintiffs allege that ARS provided all former Metro employees, except Plaintiffs, the name of Kurtz' hiring manager; ARS never informed Plaintiffs that Kurtz was the new service provider; ARS recommended hiring all former Metro employees except Plaintiffs; and ARS instructed Kurtz to offer employment to each of Metro's former employees except for Plaintiffs.

Accordingly, Plaintiffs' argument that "Kurtz actively concealed the job opening" – an allegation which is not found in the complaint – is contrary to the facts alleged. Plaintiffs argue that the Volling Lawsuit was "widely publicized in the news media" and that it is reasonable to infer that ARS disclosed the lawsuit to Kurtz during contract negotiations. (Pls. Br. at 8.) Yet the complaint contains nothing to support these claims. Plaintiffs have failed to allege how

Kurtz's hiring decisions had anything to do with the Volling Lawsuit against ARS and Metro or Plaintiffs reporting of ARS' alleged violations of the EMS Act. *See Haywood*, 323 F.3d at 532 (plaintiff must allege that the protected activity led to or was a factor in the adverse employment action).

Finally, Plaintiffs argue that ARS and Kurtz colluded to hire all of Metro's former employees except Plaintiffs. (Pls. Br. at 7-8.) For the reasons stated above, Plaintiffs' allegations about the two companies' relationship are insufficient to support this claim. Plaintiffs fail to allege facts sufficient to show a causal link between their protected activity and Kurtz's alleged failure to hire. Therefore, Count II of Plaintiffs' complaint fails and is dismissed.

**c. State Law Claims**

Having dismissed Plaintiffs' federal claim, this Court ultimately has discretion over whether to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims for violations of the Illinois Human Rights Act (Count IV) and the Illinois Whistleblower Act (Count VI). *Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1866, 173 L.Ed.2d 843 (2009); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...."). This Court declines to exercise jurisdiction over Plaintiffs' state law claims.

Nonetheless, this Court notes that even if it were to exercise jurisdiction over Plaintiffs' state law claims, they would be dismissed. Illinois courts apply the same standard to IHRA claims that federal courts apply to Title VII retaliation claims. *See, e.g.*, *Rabe v. United Air Lines, Inc.*, 971 F. Supp. 2d 807, 821 (N.D. Ill. 2013) (citing *Zaderaka v. Ill. Human Rights Com'n*, 131 Ill.2d 172, 178, 137 Ill. Dec. 31, 545 N.E.2d 684, 687 (Ill. 1989). For the reasons

previously discussed, Plaintiffs fail to sufficiently allege an adverse employment action or the causal connection necessary to support their IHRA claim.

Regarding their Illinois Whistleblower Act claim, the Act provides that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule or regulation." 740 ILCS 174/20. In order to sustain a cause of action under the Act, Plaintiffs must establish that (1) they refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation and (2) Kurtz retaliated against them because of that refusal. *See Nelson v. Levy Home Ent't, LLC*, No. 10 C 3954, 2012 WL 403974, at *8, (N.D. Ill. Feb. 8, 2012) (citing *Sardiga v. Northern Trust Co.*, 409 Ill. App. 3d 56, 61, 948 N.E.2d 652, 656–57, 350 Ill. Dec. 372 (2011)). A Whistleblower Act claim requires the plaintiff to show that refusal to participate in an illegal activity caused her employer to retaliate against her. *See Robinson v. Stanley*, No. 06 C 5158, 2011 WL 3876903, at *5-7 (N.D. Ill. Aug. 31, 2011). Here, there are no allegations regarding any act of refusal with respect to Ms. Volling. Plaintiffs allege only that when he was employed by ARS and Metro, Mr. Springer refused an order to complete a medical report for a patient he did not treat, which would have been in violation of the Emergency Medical Services System Act ("EMS Act"). (Compl. ¶ 29.) Yet Mr. Springer fails to allege that Kurtz had any knowledge of Mr. Springer's refusal to complete the medical report or that Kurtz retaliated against him because of the refusal. Indeed, Plaintiffs assert only that at the time it made its hiring decisions, Kurtz was "was otherwise aware" that Mr. Springer reported conduct by other squad members that would violate the EMS Act. Plaintiffs' state law claims are therefore dismissed.

**Conclusion**

For the foregoing reasons, defendant Kurtz's motion to dismiss [18] is granted and

Plaintiffs' complaint is dismissed in its entirety.

        SO ORDERED.

SHARON JOHNSON COLEMAN
United States District Judge

DATED:  March 9, 2015