# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHANNON VOLLING and ALLEN SPRINGER, | ) )  )  Case No. 14-cv-04423 |
| Plaintiffs, | ) ) ) Judge Sharon Johnson Coleman |
| v. | ) ) |
| ANTIOCH RESCUE SQUAD and KURTZ PARAMEDIC SERVICE, INC., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Shannon Volling and Allen Springer filed a three-count amended complaint against defendant Kurtz Paramedic Service, Inc. ("Kurtz"), alleging claims of retaliation in violation of Title VII of the Civil Rights Act of 1991 (Count I), the Illinois Human Rights Act (Count II), and the Illinois Whistleblower Act (Count III). Kurtz moved to dismiss all counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, Kurtz's motion to dismiss [67] is granted.

**Background**

The following facts are taken from the amended complaint and are accepted as true for the purposes of ruling on the instant motion. Antioch Rescue Squad ("ARS") is a rescue squad operator offering ambulance and paramedic services in Antioch, Illinois. (Dkt. # 65 ¶ 7). It relies on volunteer emergency medical technicians ("EMTs") to staff its evening and weekend shifts, but contracts with paramedic service providers such as Metro Paramedic Services, Inc. ("Metro") and Kurtz to staff its weekday daytime shifts. (*Id.* ¶¶ 8, 9, 12). At times relevant to this case, ARS maintained contracts with Metro and Kurtz to provide such staffing. (*Id.*). Both plaintiffs were

1

employed simultaneously as ARS volunteers (when working night and weekend shifts) and paid Metro employees (when working daytime, weekday shifts) prior to April 2011. (*Id.* ¶¶ 20–22).

On April 5, 2011, Volling filed an EEOC charge against ARS and Metro, alleging sexual harassment, discrimination, and retaliation. (*Id.* ¶ 23) Volling then filed a complaint in this district on July 21, 2011 against ARS and Metro based on allegations of sexual harassment and other misconduct within ARS and Metro's workplace (the "Volling Lawsuit"). (*Id.* ¶ 25). On October 3, 2011, Springer signed a declaration in support of the Volling Lawsuit, affirming Volling's allegations. (*Id.* ¶ 29).

In October 2011, Volling also reported ARS to the Illinois Department of Public Health ("IDPH"), and both plaintiffs cooperated with the ensuing IDPH investigation. (*Id.* ¶¶ 35, 36). Springer also reported violations of the EMS Act by ARS and Metro squad members to the North Lake County EMS System. (*Id.* ¶ 33). Moreover, plaintiffs raised their concerns regarding misconduct within ARS at squad meetings and at village meetings, including a May 2012 session at which the ARS' leadership was present. (*Id.* ¶ 49). Plaintiffs allege that in retaliation for these actions ARS reduced their work hours, disciplined them, made accusations of misconduct which resulted in mandatory drug testing, and threatened to terminate them. (*Id.* ¶¶ 41–47).

In or around May 2012, ARS and Kurtz began discussing a possible contract in which Kurtz would replace Metro in providing ARS's daytime staffing needs. (*Id.* ¶ 50). On June 15, 2012, ARS terminated its contract with Metro and entered into a contract with Kurtz. (*Id.* ¶ 51). Accordingly, Metro terminated each of the daytime employees assigned to ARS, including plaintiffs. (*Id.* ¶ 52).

On June 16, 2012, Kurtz hired every former Metro employee assigned to ARS, except for plaintiffs, to staff ARS's daytime shifts. (*Id.* ¶¶ 54, 68). Plaintiffs contend that Kurtz was aware of the Volling suit, the IDPH investigation, and their activities in public meetings, (*Id.* ¶¶ 71–80) and that ARS and Kurtz, acting together, "refused to hire" them in retaliation for these activities. In

support, plaintiffs allege that ARS and Kurtz, acting together, handpicked which Metro employees they would rehire and deliberately excluded plaintiffs from this process by concealing the facts that Kurtz was the new service provider and that Kurtz was interviewing and hiring former Metro employees from the plaintiffs. (*Id.* ¶¶ 59–67). Plaintiffs further allege that ARS provided all former Metro employees, except plaintiffs, with instructions on how to apply for continued employment under the Kurtz contract and that ARS provided Kurtz with contact information for all former Metro employees except plaintiffs. (*Id.* ¶¶ 60–62, 68).

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 1973, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must allege factual "allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). Put differently, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *see also* Fed. R. Civ. P. 8(a). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

*1. Title VII Claim*

To state a claim for retaliation under Title VII, a plaintiff must allege that (1) she engaged in a legally protected activity, (2) she suffered an adverse employment action, and (3) a causal

connection exists between the protected activity and the adverse action. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Although plaintiffs are not required to plead a prima facie case at this stage, they nonetheless retain the burden of alleging facts sufficient to state all of the elements of their claim. *Twombly*, 550 U.S. at 569–70. Kurtz does not contest the sufficiency of plaintiff's allegations that they were engaged in legally protected activities. Rather, Kurtz moves to dismiss plaintiffs' claims for failure to plead the adverse employment action and causation elements necessary for their Title VII claims.

Ordinarily, a plaintiff pleading a retaliatory failure-to-hire must allege, inter alia, that she applied for and was qualified for the position sought. *Cichon v. Exelon Generation Co., LLC,* 401 F.3d 803, 812 (7th Cir. 2005); *Morgan v. Federal Home Loan Mortg. Corp.*, 328 F.3d 647, 650 (D.C. Cir. 2003). Plaintiffs do not allege that they applied for a position with Kurtz. Rather, they argue that by failing to announce the available positions, failing to contact the plaintiffs, and "handpicking" the Metro employees that they hired, Kurtz engaged in a "closed application process" that precluded them from applying and that the application requirement should therefore be waived. The exception that plaintiffs rely on, however, applies only where "the facts of a particular case make an allegation of a specific application a quixotic requirement," *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 710 (2d Cir. 1998), or where an employer "does not solicit and await applications but hands out promotions on its own initiative in a nonselective, serial fashion." *Loyd v. Phillips Bros., Inc.,* 25 F.3d 518, 523 (7th Cir. 1994). It therefore applies predominantly in situations where a company fails to promote current employees, because in such a situation an application may be found unnecessary to inform the employer of the employee's interest in and qualification for the position. *See, e.g., Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir. 1985) ("When an employer uses a promotion system in which employees do not apply for promotions but rather are sought out by managers, the application requirement of the prima facie case is loosened somewhat."). Here, conversely, plaintiffs make no

4

plausible allegation that Kurtz's relationship with the plaintiffs was such that an application was unnecessary.

Moreover, even if plaintiffs had sufficiently pled an adverse employment action, they nonetheless fail to allege that a causal connection exists between the adverse action and their protected activity. *Stephens*, 569 F.3d at 786. To meet this requirement, the plaintiffs must plausibly allege that their protected activities led to or were a major factor in the adverse employment action. *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). Although plaintiffs allege that Kurtz was aware of their protected activities, nothing alleged in the complaint plausibly suggests that Kurtz had motive to retaliate in response to those activities. Moreover, although plaintiffs contend that Kurtz did not advertise that it was hiring former Metro employees, they do not plausibly allege any affirmative action by Kurtz to prevent them from learning of, applying for, or being hired for the available positions. To the contrary, if anything plaintiffs' allegations would tend to state a claim against ARS, a former defendant in this case. Plaintiffs allege that it was ARS who informed all former Metro employees except plaintiffs that Kurtz was the new service provider, told all former Metro employees except plaintiffs how to apply for positions with Kurtz, and provided Kurtz with the contact information of all former Metro employees except plaintiffs. Plaintiffs do not plausibly allege that Kurtz participated in or had knowledge of any of these actions taken by ARS. Accordingly, Count I of the plaintiffs' amended complaint is dismissed.

2. *State Law Claims*

Having dismissed the plaintiffs' federal claim, this Court ultimately has discretion over whether to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims for violations of the Illinois Human Rights Act (Count II) and the Illinois Whistleblower Act (Count III). *Carlsbad Tech., Inc. v. HIF BIO, Inc.,* 556 U.S. 635, 639–40, 129 S.Ct. 1862, 1866, 173 L.Ed.2d 843 (2009); 28 U.S.C. § 1367(c). In the interest of judicial efficiency, this Court exercises its

5

discretion to address the plaintiff's remaining state law claims under the IHRA and the Illinois Whistleblower's Act.

Illinois courts apply the same standard to IHRA claims that federal courts apply to Title VII retaliation claims. *Rabe v. United Air Lines, Inc.,* 971 F. Supp. 2d 807, 821 (N.D. Ill. 2013) (Pallmeyer, J.); *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill.2d 172, 178, 545 N.E.2d 684, 687 (1989). As previously discussed in the context of Title VII, the plaintiffs fail to sufficiently allege an adverse employment action or the causal connection necessary to support their IHRA claim.

Regarding the plaintiffs' Illinois Whistleblower Act claim, the Whistleblower Act provides in pertinent part that "[a]n employer may not retaliate against an employee" in response to certain protected activities. 740 ILCS 174/15. The act further defines "employee" as "any individual who is employed on a full-time, part-time, or contractual basis by an employer." 740 ILCS 174/5. Because the plaintiffs do not allege that they were ever employed by Kurtz, their Whistleblower Act claim fails as a matter of law. It is therefore appropriate for this Court to dismiss the plaintiffs' state law claims.

**Conclusion**

For the foregoing reasons, Kurtz's motion to dismiss [67] is granted and this case is dismissed with prejudice.

SO ORDERED.

Sharon Johnson Coleman
United States District Court Judge

DATED: October 19, 2015